*Ninth Judicial District.*

## In the Court of Common Pleas of Cumberland County.

## THE CARLISLE DEPOSIT BANK v. JACOB RHEEM.

Notice of protest having been left with A. on Sunday, being told what it was, and the following Monday being in time to serve said notice : *Held*, that that was sufficient.

The court reserved the question, as to whether, leaving notice of protest with defendant, on Sunday, 1st January, 1871, and telling him what it was, and the following Monday, 2d January, 1871, being in time to serve said notice, so that the defendant was in actual possession of it in time, and knew that he was, rendered him liable as endorser of the draft in suit.

Opinion by

JUNKIN, P. J.  The defendant is sued as endorser of a draft dated November 17th, 1870, drawn by William Leeds, in his own favor and order, for $1200, at forty days, on Henry Glass, and by him accepted, payable at the Union Banking Co., Philadelphia.  The plaintiff, a bank at Carlisle, over one hundred miles from the former place, discounted in due course of business, the said draft, and at its maturity, the 30th December, 1870, payment being refused, it was duly protested, and the notices, instead of being mailed at Philadelphia, were sent on the 31st of December, 1870, to the plaintiff as last endorser, who undertook, that same evening (December 31, 1870) to serve the notices of protest on the defendant, Rheem, but Mr. Smith, the teller, failing to find him, gave it over, and on Sunday the first day of January, 1871, went to the house of defendant, called him to the door, and handed him the envelope containing said notice of protest, and the jury have found, that the teller, at the moment of so doing, told defendant that it contained notice of the protest of Leeds' draft.  Defendant took the envelope, put it in a desk, and did not look at it until several days had passed.  The question is, as plaintiff had by law, Monday, the 2d of January, 1871, to give this notice of protest, was the delivery of the envelope with its contents accompanied with the information, communicated by the teller, on Sunday, sufficient to charge the defendant as endorser.

Notice of protest is authentic information from the proper source that the paper has been dishonored ; its object is to enable the party notified to take measures for his own security against parties liable to him. It need not be in writing, any information coming from parties interested, and whose duty it is to give it, and certain to a reasonable intent, will suffice.  When the endorser lives elsewhere than at the place fixed for payment, notice by mail may be given.  It may be given verbally and personally ; or in writing, and left at his place of business or dwelling.

If it can be shown that it was actually received by the endorser in due time, when in writing, there is no difficulty; but when this cannot be done, then rules have been established, which, if complied with, are considered as equivalent to notice, although notice may never have reached him; actual notice dispenses with the ordinary requirements: Hollowell & Co., v. Curry et al., 5 Wright, 322. In Bank of United States v. Corcoran, 2 Peters, 132, and Dickens v. Beal, 10 Pet. 578, it was held, though left at an *improper place*, nevertheless, if in point of fact, the notice was *received* in due time by the endorser, it was sufficient in point of law to charge him, so that after all, the question is, did he know certainly and from proper sources, that the particular draft was dishonored.

Can the day on which, or the channel through which, the knowledge comes, whether written or spoken, be material? Could a purchaser, who had received notice of a trust, on Sunday, written or spoken, say he knew it not on account of the day, and therefore discharged? Now, it is found as a fact, that the teller told him that the envelope contained notice of the protest of the Leeds' draft. He had knowledge of the fact, both verbally and in writing. That under our Sunday law, all contracts made on that day are to be considered as not made at all, is conceded. And had the 1st of January, 1871, (Sunday) been the last day the plaintiff had for giving this notice, it would have amounted to nothing, for he was not bound to open it on Sunday, and the authorities say it is to be considered as received on Monday: Parsons on Notes and Bills, ed. 1873, page 515, vol. 1. And he cites Wright v. Shawcross, 2 B. & Ald. 501, note; Bray v. Hawden, 5 Maul. & S. 68; Deblieux v. Bullard, 1 Rob. La. 66, where notice was given on the 4th of July, Marvin, J. said, it might be given on Sunday. "If a holiday or Sunday intervenes it is not counted, but adds one more day of allowable delay. If notice is received on Saturday, it need not be forwarded until some mail on Monday, even if there is a Sunday mail."

Then plaintiff had Monday, the second of January, 1871, to give the notice, and inasmuch as defendant was in possession of the envelope containing said notice on that Monday, he was duly notified that the draft was protested. Had a post carrier delivered the envelope on Sunday it would suffice; but then that would be on the ground that it was duly posted, and he bound, though he never received it. Nor do we rest our conclusions on the ground that he might have declined receiving the letter, and by receiving waived irregularity, because the statute was not his to waive. But we place his liability *solely* on the ground, that on Monday, the 2d day of January, 1871, that day being in good time, he had in his possession, a notice of the protest of the draft in suit, *and knew that he had it.*

Had the envelope fallen from the clouds, or been carried to him in the mouth of a fish, like the tribute for Cæsar, with the direct information

from the teller of the bank, "this is the notice of the protest of the Leeds draft," he would have been fixed for the money, because the whole purpose of the notice is, to inform him of non-payment.

The statute does not forbid talking or writing on Sunday, and a fact communicated on that day, is as much the truth, as it would be, spoken on any other day. In Baker *v.* Hopkins, 7 Barr 492, a bond void because executed on Sunday, was used as an *admission* of liability, and Coulter, J. there says, "a man may acknowledge the truth on Sunday, and he knew of no rule preventing its being given in evidence against him, that if a man write a letter on Sunday, and sends it to his creditor, who gets it on Monday, or even takes it from the office on Sunday, he presumes it would be competent evidence against the debtor." He further adds : "We cannot carry the law so far, as to say, that the admission of a previous existing debt, made on the Sabbath, is not good." And in 2d Casey, 140, Uhler *v.* Applegate, it was held that an agreement, though made on Sunday, and void as an executory contract or agreement, yet the payment of the money afterwards, and its receipt by the obligee, constitued a new contract, which was binding on the parties. Defendant was not bound to open and read the notice on that Sunday ; the law gave him until Tuesday, the 3d of January, 1871, to notify the parties to whom he would look for indemnity, but being in possession of the notice on Monday, was all the law required, and how he came by it, is not material, so that he had it. We are not unmindful of Stern's Appeal, 14 Smith, 447, where it was held, that an order to the sheriff, given verbally on Sunday, to resume action on a suspended execution, did not create a lien on the defendants goods nor give precedence ; and that the sheriff was not bound to receive such order on Sunday, for if he was, then he must keep his office open on that day. It is enough to observe, that this order required the sheriff to *act*, and this he was not bound to do on Sunday. But had a written order been handed to him on Sunday, which was in hands on the Monday following, and he knew its purport from the person handing it, could he have said he was not bound to act ? How he came by it, if he had it on Monday, would not be material.

For the reasons given we think defendant is liable, and therefore determine the reserved point in favor of the plaintiff, and the latter is permitted to enter judgment on the verdict.

Messrs. *Henderson & Hays* for plaintiff ; Hon. *S. Todd* and *C. H. McLaughlin*, Esq., for defendant.